```
1                        UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF OHIO
2                              WESTERN DIVISION

3    UNITED STATES OF AMERICA,      Docket No. 3:15CR24

4              Plaintiffs,          Toledo, Ohio

5              v.                   April 11, 2016

6    CONRADO SALGADO SOTO

7              Defendants.

8    ------------------------------

9              TRANSCRIPT OF SENTENCING HEARING
             BEFORE THE HONORABLE JAMES G. CARR
10                UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:  Chelsea S. Rice
                          Office of the U.S. Attorney
14                        801 Superior Avenue, W, Suite 400
                          Cleveland, Ohio 44113
15                        (216) 622-3752

16                        Dana Mulhauser
                          U.S. Department of Justice
17                        950 Pennsylvania Avenue
                          Washington, DC 20530
18                        (202) 305-0007

19

20   For the Defendant:
                          Kurt W. Bruderly
21                        1119 Adams Street, 2nd Floor
                          Toledo, Ohio 43604
22                        (419) 243-3800

23

24   Court Reporter:      Angela D. Nixon, RMR, CRR
                          1716 Spielbusch Avenue
25                        Toledo, Ohio 43624
                          (419) 260-5259
```

1  Proceedings recorded by mechanical stenography, transcript
2  produced by notereading.

```
 1             THE COURT:  Counsel, apparently -- well,
 2   apparently technically Ms. Donahue can only translate for
 3   one --
 4             MR. KLUCAS:  Right.  Right.
 5             THE COURT:  -- other than both defendants.  So
 6   it's up to you whether you want to talk to your client and
 7   see if he'd be willing to waive any potential conflict.
 8             MR. KLUCAS:  We would expect that she would sit
 9   with the defendant for whose case is actually being called.
10             COURTROOM DEPUTY:  Case 3:15CR24-2, United States
11   of America versus Conrado Salgado Soto.  Matter called for
12   sentencing.
13             THE COURT:  Record should show defendant's
14   present in court with his attorney, Mr. Kurt Bruderly.
15   Ms. Ellen Donahue, previously sworn and accepted by this
16   court to be a certified interpreter.  And as always,
17   Ms. Donahue, if anybody is going too fast, say so.
18             INTERPRETOR:  Yes, Your Honor.
19             THE COURT:  Also, please explain to the defendant
20   that if at any time he doesn't understand something or
21   wants to talk to his attorney, he should say so.  And of
22   course he will have that opportunity to do so with your
23   assistance and in confidence.
24             THE DEFENDANT:  Thank you.
25             THE COURT:  Counsel, have you each received and
```

```
 1   reviewed the Presentence Report?  If so, do you have any
 2   objections?  If not, are you prepared to proceed with
 3   sentencing?
 4            MS. RICE:  Yes, we have reviewed it, Your Honor.
 5   No objections on behalf of the United States.  We are ready
 6   to proceed.
 7            THE COURT:  Mr. Bruderly?
 8            MR. BRUDERLY:  Judge, on behalf of Mr. Salgado
 9   Soto, we have reviewed the final presentence investigation
10   report.  We have no formal objections at this time, though
11   we do have some factual clarifications we will make or
12   attempt to make during mitigation, Your Honor.
13            THE COURT:  Okay.  Sir, did you go over the
14   Presentence Report, or did your lawyer go over the
15   Presentence Report with you?  And if so, was that done in
16   Spanish?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  Did your lawyer answer any questions
19   you may have had about it?
20            THE DEFENDANT:  Always.
21            THE COURT:  And are you confident that you
22   understand what the report says and what it means?
23            THE DEFENDANT:  Yes.
24            THE COURT:  And are you fully and completely
25   satisfied that Mr. Bruderly has done everything he should
```

1    do and should have done to prepare both you and him for

2    today's proceeding?

3            THE DEFENDANT: Yes, sir.

4            THE COURT: Likewise, throughout the entire

5    course of these proceedings, has Mr. Bruderly undertaken to

6    learn about the government's evidence and to discuss that

7    evidence with you --

8            THE DEFENDANT: Yes.

9            THE COURT: -- and to give you whatever advice he

10   thought was in your best interest?

11           THE DEFENDANT: Yes, he's done that.

12           THE COURT: And Mr. Bruderly, was this, to use a

13   colloquial term, an open file case?

14           MR. BRUDERLY: Yes, Your Honor, it was.

15           THE COURT: Mr. Salgado Soto, did Mr. Bruderly do

16   everything you asked him to do?

17           THE DEFENDANT: Yes. You mean the favor in the

18   case? Yes.

19           THE COURT: Okay. Did you ever tell him not to

20   do something, but he went ahead and did it anyway?

21           THE DEFENDANT: It's been done in agreement.

22           THE COURT: Okay. To review the guideline

23   computations, base offense level 22, criminal history

24   category one, guideline range of 41 to 51 months. Is that

25   correct, counsel?

```
 1                    MS. RICE:  That's correct, Your Honor.
 2                    THE COURT:  Mr. Bruderly, is that your
 3      understanding?
 4                    MR. BRUDERLY:  Yes, Your Honor.
 5                    THE COURT:  Again, I would be inclined to give a
 6      sentence within the guideline range, of course subject to
 7      hearing both from the government and from defense counsel
 8      and the defendant.
 9                    MS. RICE:  Thank you, Your Honor.
10                    On behalf of the United States, this defendant,
11      while not the most culpable in this case, was -- the
12      individuals that worked for him, he knew that they were
13      here illegally.  He was in contact with his co-defendant,
14      Mr. Castillo-Serrano, in discussions about bringing these
15      individuals to the country illegally.  And he was aware
16      that they were not free to leave the trailers and work at
17      the egg farm until they had paid off their debt to
18      defendant Castillo-Serrano.
19                    Your Honor, we would ask The Court to impose a
20      guideline sentence based on this defendant's level of
21      culpability, his involvement with the minors and adult
22      victims who were brought over into the United States and
23      forced to work, and his ongoing communications with his
24      co-conspirators.  So we believe based on this defendant's
25      individual circumstances and his involvement, that a
```

1    guideline range is appropriate.  Thank you, Your Honor.

2           THE COURT:  Mr. Bruderly?

3           MR. BRUDERLY:  Thank you, Judge.  May it please

4    The Court.  Your Honor, we're asking The Court to consider

5    a sentence at the low end of the guideline range pursuant

6    to our plea agreement in this case.  Specifically, Judge,

7    we did file a sentencing memorandum, which I'm sure The

8    Court has reviewed so we will not reiterate contents for

9    today.

10          Mr. Salgado Soto wants The Court to know the

11    following about him, that he is a loving father and

12    husband.  He was a homeowner.  He was a man who established

13    a business from the start for the right reasons, in order

14    to keep food on the table for his family, to have enough

15    money to send his daughter to college.  Unfortunately, as

16    it is in the business in which he was involved in and his

17    status as an illegal alien himself, he began to associate

18    with individuals in his workplace environment that were

19    indeed committing a conspiracy, and a part of the

20    conspiracy we're here for today.  He assimilated into that

21    environment.

22          THE COURT:  I'm sorry, a little more slowly

23    please, Mr. Bruderly.  Ms. Donahue, is that okay?

24          INTERPRETOR:  I'm fine, Your Honor.

25          THE COURT:  Go ahead.

1    MR. BRUDERLY: Basically, Judge, he accepts
2 responsibility for his actions. He understands that he's
3 culpable for everything that he did. What we want to
4 mention, I think it's important for Conrado personally to
5 have The Court know, is that he believes he never harmed or
6 threatened -- physically harmed or threatened any of the
7 juveniles or individual victims in this case. He wants The
8 Court to know that he had no involvement in the smuggling
9 aspect of it.
10    THE COURT: And I understand that fully. Go
11 ahead.
12    MR. BRUDERLY: Very well, Judge.
13    THE COURT: I meant to mention that and I forgot.
14    MR. BRUDERLY: That's all right, Judge, but those
15 were his concerns about the Presentence Investigation
16 Report, that it would put him in that light, being the
17 individual, to explain this to Conrado, I used the analogy
18 of a burning fire, Your Honor. He wasn't the individual
19 who poured gas on the fire, who lit the spark. He was the
20 wood that someone puts on the fire to continue it to burn
21 and to continue it to operate the same way that a fire
22 does. That was his role in this offense. And he has
23 always from day one admitted that to the government and
24 accepted his responsibility, Judge.
25    Conrado got pretty close with his workers. He

```
1    understands their fight.  Though he had no personal say in
2    their living conditions, he knew what they were.  He
3    continued to transport them to and from the various working
4    operations, as well as to be a supervisor for Trillium
5    Farms and the various contractors above him.  So they would
6    do their work and eventually pay off their debts to his
7    co-defendants.
8             Your Honor, in regards to the 3553 factors, with
9    his resident status he will be deported, we believe.  We
10   think that's important to know that that deportation itself
11   deters him publicly or privately from committing any
12   further acts against the United States.  And the fact that
13   he does not speak English very well also limits his ability
14   to enroll in certain BOP programs that would otherwise
15   reduce his sentence or provide him with any sort of
16   educational or vocational capabilities, Your Honor.  So
17   Conrado's time will be different than what a normal
18   citizen's time might be, and we'd like The Court to
19   consider that.
20            Judge, I think it is telling that the victim
21   impact statements here today, as well as the previous
22   co-defendant, did not mention Mr. Salgado Soto's name or
23   his involvement in this.  We do agree that he is more
24   culpable than other co-defendants, but he is indeed not the
25   head honcho, so to speak, Judge.
```

```
 1              With that, Your Honor, we'd ask The Court to
 2   consider a sentencing guideline at the low end of the 22,
 3   criminal history category one range, Your Honor.
 4              THE COURT:  Sir, you have the right to speak on
 5   your own behalf before I pronounce sentence.
 6              THE DEFENDANT:  What I want to do before anything
 7   is to apologize to you, Your Honor, to the prosecutors who
 8   participated in the case and to the agents, and apologize
 9   to the families and the victims, and my family that's going
10   through this as well.  That's all.
11              THE COURT:  Pursuant to the Sentencing Reform
12   Act, it's the judgment of this Court that defendant be and
13   hereby is committed to the custody of Bureau of Prisons to
14   serve a term of 51 months.  It's a guideline sentence, but
15   it's the high end of the guidelines.  I'll explain my
16   reasons for my sentence before concluding.  And that's as
17   to each count, that will be served concurrently, not
18   consecutively.  That will be followed by a three-year term
19   of supervised release.  That will be unsupervised.  And the
20   only condition of that term of supervised release will be
21   that you're not -- do not return to this country within
22   that period.
23              Upon completion of your term, you will be
24   remanded to the custody of Immigration and Customs
25   Enforcement for deportation to Mexico.  You should
```

1  understand that you can never again lawfully come back into
2  this country, no matter where your family is or what the
3  conditions are, upon what conditions you encounter upon
4  your return to Mexico.  If you do undertake to come back to
5  this country, there's a very substantial likelihood that
6  you'll be apprehended, if not at the border, then near the
7  border.  Or even if you are able to get some distance from
8  the border, sooner or later you would encounter an American
9  police officer.  You should understand that things are
10 vastly different than they were when you first came to this
11 country a couple of decades or so ago.  Then the only law
12 enforcement officer's concern with illegal immigration were
13 immigration naturalization.  Other American police officers
14 simply didn't care, you got a traffic ticket, got convicted
15 of a crime, you pay the fine, you be sent on your way,
16 serve your time in prison, and you'd be out back on the
17 streets.  If fact, I think that happened to you yourself in
18 the past.  That's not the way it is anymore.  I have
19 immigration cases on my docket.  Until about five years ago
20 I never had an immigration case.  I've had police officers
21 in Paulding County, Ohio and other little areas, towns that
22 you've never heard of probably, they stop somebody, they
23 determine that that person may not be here lawfully, and
24 their next call is to Immigration Customs Enforcement,
25 Customs and Border Patrol.  You will be prosecuted,

1  prosecuted of a felony.  Given your prior record, I would
2  expect that your term of imprisonment will be anywhere from
3  three to five years.  If you come back to this country
4  within the three years after release from prison, you get
5  another year or two on top of that.
6        I note from the report that you intend -- your
7  family intends to return to Mexico.  Whether they do or
8  not, that doesn't matter.  You must and you will return,
9  and you must stay there, or otherwise you will be caught
10 sooner or later.  None of us can long go without
11 encountering a police officer.  Any American police officer
12 in this country and every American police officer considers
13 themselves working for Immigration Customs Enforcement.
14 They'll walk up to you on the street corner, start talking
15 to you, thirty seconds or two minutes they're going to know
16 that you don't belong here.  I tell you that because I want
17 to emphasize to you things are different in this country.
18 I know I've been engaged in sentencing of border ports in
19 Arizona, Texas, New Mexico for the past two or three years
20 a dozen or more times.  And I'm well aware, even though our
21 public may be entirely ignorant of the fact, but our
22 borders are vastly more secure than they were five years
23 ago.  You will be caught sooner or later, and you will go
24 to prison again, and your family will be as bad off as
25 they're going to be for 51 months.  You will be given

1  credit for time served, but you'll be spending them in an
2  American prison in an American detention facility while
3  awaiting deportation back to Mexico.  I sincerely hope you
4  understand that.
5         I've considered the Section 3553(a) factors, and
6  basically have the same -- consideration's been the same,
7  and my reasons are the same as I previously indicated.  You
8  participated in involuntary servitude, degradation and
9  inhumane treatment that has been described so vividly in
10 the Presentence Reports and the victim impact statements.
11 I realize that you may not have been a direct participant,
12 it was not your trailers, if I understand correctly, that
13 you were, in a sense, a mid-level individual.  But I have
14 no doubt that you knew that many of the people you were
15 transporting and otherwise dealing with were responsible
16 for transporting were juveniles.  And I wonder how you
17 would have felt if your children at age 14 or 15 had been
18 subjected to what you helped the victims in this case be
19 subjected to.
20        The principal purpose of this sentence is to
21 express my personal abhorrence as to the reprehensibility
22 of the crimes to which you were involved, my concern for
23 the victims of those crimes.  I'm concerned for others who
24 may be similarly situated because of others like yourself
25 and the other defendants in this case that did what you did

1 and did what they did.

2     I believe that the sentence is a just sentence.
3 I would certainly hope it enhances respect for the law.
4 Its principal purposes are public deterrence and hope that
5 the government undertakes to see to it what was happening
6 in these cases and in other cases like it will become well
7 publicized and come to public's attention so if anybody in
8 any way whatsoever is responsible for the kind of
9 conditions and conduct that have been so vividly portrayed
10 with these proceedings understands what will happen.

11     I could have given you a sentence, according to
12 my understanding, of up to 20 years. I chose to remain
13 within the guidelines in light of the representations made
14 by the government and by your attorney. However, I cannot
15 ignore the very serious nature of this offense and the
16 consequences that it had upon the people with whom you were
17 dealing and the others who were likewise involved in the
18 criminal activities that occurred in this case. I hope
19 that it accomplishes the public deterrence purpose because
20 I think that's of major significance in a case like this.
21 I do think that a guideline sentence in this case is
22 sufficient but not greater than necessary to accomplish the
23 purposes of the investigation, prosecution, conviction and
24 sentencing.

25     Are there any further comments the government

```
 1   thinks I should make with regard to Section 3553(a)
 2   factors?
 3           MS. RICE:  Your Honor, not with respect to the
 4   3553(a) factors.  When The Court finds it appropriate, I
 5   would like to speak regarding restitution.
 6           THE COURT:  Of course.  I'm sorry, I overlooked
 7   that.  I knew there was something --
 8           MS. RICE:  Okay.
 9           THE COURT:  Go ahead.
10           MS. RICE:  And then also, Your Honor, counts for
11   dismissal, would you like counts for dismissal at this
12   time?
13           THE COURT:  Yes.
14           MS. RICE:  Okay.  At this time Your Honor, the
15   United States moves and asks The Court to dismiss as to
16   defendant Salgado Soto Counts 2, 3, 5, 6, 7, 8, 10, 11 and
17   15 of the superseding indictment.
18           THE COURT:  Okay.  That motion will be granted.
19           Now with regard to the issue of restitution -- I
20   don't think a fine is necessary by the way, note that.
21           But go ahead.
22           MS. RICE:  Thank you, Your Honor.  With respect
23   to restitution, as the United States outlined in its
24   sentencing memorandum, pursuant to 18 United States Code
25   Section 1593, because this offense does involve a human
```

1  trafficking offense that the defendant has pleaded guilty
2  to, restitution, specifically back wages are owed and shall
3  be paid to the victims in this case pursuant to the Fair
4  Labor Standards Act.  Your Honor, we have submitted as
5  Government's Sentencing Exhibits 1 and 2, the calculation
6  of the back wages as prepared by investigators with the
7  Department of Labor, Wage and Hour Division.  And the total
8  amount of back wages for victims one through ten of the
9  indictment that we're requesting Mr. Salgado Soto and
10 defendant Castillo-Serrano to pay joint and severally is
11 $62,482.
12         THE COURT:  Okay.  That restitution order will be
13 entered.  It will be taken through prison earnings.  And if
14 somehow you are ever to come back to this country, which is
15 not possible for you to do so lawfully, any funds that you
16 may have are required to be applied to that restitution
17 amount.
18         Anything further from the government?
19         MS. RICE:  Your Honor, I would also ask that this
20 defendant be ordered to pay, as detailed on the Presentence
21 Report, the $4,750.
22         THE COURT:  That likewise will be part of the
23 judgment entry.
24         MS. RICE:  And finally, Your Honor, because
25 Mr. Salgado Soto did plead guilty to a human trafficking

1  offense, under Title 18, United States Code Section 3014,
2  there is an increased special assessment that we are asking
3  The Court to impose.  It is a $5,000 special assessment
4  that shall be paid by any non-indigent defendant, and it is
5  mandatory, Your Honor.
6             THE COURT:  And that likewise will be part of the
7  judgment.  Anything further?
8             MS. RICE:  No.  With that, Your Honor, nothing
9  further on behalf of the United States.
10            THE COURT:  Mr. Bruderly, anything further on
11 behalf of your client?
12            MR. BRUDERLY:  No, Your Honor, nothing at this
13 time.  Thank you.
14            THE COURT:  Sir, as part of your plea agreement
15 with the government, you've waived your right to appeal or
16 otherwise challenge your sentence unless it exceeds the
17 statutory maximum, which it has not.  If grounds for appeal
18 appear to exist, discuss that with Mr. Bruderly.  If such
19 grounds do exist, you must file a Notice of Appeal within
20 14 days or lose forever whatever right you might otherwise
21 have to challenge your conviction or sentence by way of
22 directed appeal, habeas corpus, post conviction relief
23 Section 2255 or otherwise, do you understand that?
24            THE DEFENDANT:  Yes.  Yes, sir.
25            THE COURT:  I simply want to advise you, as I did

```
1   the other individual, Mr. Duran, that if you were to file a
2   Notice of Appeal, the government might well find it's
3   not honoring the promises it made to you, which include the
4   dismissal of several counts, and you could find yourself
5   standing trial and potentially exposed to a substantially
6   greater sentence or more adverse outcome.  Still, the
7   decision is up to you if there are grounds to appeal that
8   appear to exist.
9            Does either party have any objection to any part
10  of these proceedings not previously made?
11           MS. RICE:  Not on behalf of the United States,
12  Your Honor.  Thank you.
13           THE COURT:  Mr. Bruderly?
14           MR. BRUDERLY:  Not on behalf of the defendant.
15           THE COURT:  That will conclude this proceeding.
16              (A side bar conference was had on the
17                 record.)
18           MR. BRUDERLY:  Judge, I just wanted to place on
19  the record, Mr. Salgado Soto did not sign his
20  acknowledgment waving his rights to appeal.
21           THE COURT:  That's fine.
22           MR. BRUDERLY:  Simply because he believed that
23  the plea agreement indicated he would be a level 21 rather
24  than a 22, in which The Court sentenced him under.  I
25  believe it's just a matter of me getting out the plea
```

```
 1   agreement, going over it with him with an interpreter and
 2   setting him straight on what it actually was.  I just
 3   wanted to indicate he did not sign it.
 4              THE COURT:  If there's any problems, let me know.
 5              MR. BRUDERLY:  Absolutely, Judge.  And I'll
 6   submit this to The Court.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3          I certify that the foregoing is a correct transcript

 4   from the record of proceedings in the above-entitled matter.

 5

 6   s:/Angela D. Nixon

 7   ----------------------------                    -----------

 8   Angela D. Nixon, RMR, CRR                           Date

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```